UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

                             :

UNITED STATES,                        :

                             :

                             :

         - against -           :        22-CR-110 (VSB)

                             :        **OPINION & ORDER**

ERIC LESANE,                    :

                             :

                     Defendant.  :

                             :

------------------------------------------------------X

Appearances:

Elizabeth Anne Espinosa
U.S. Attorney's Office
New York, NY
*Counsel for United States of America*

Donald Joseph Yannella , III
Donald Yannella P.C.
New York, NY

Jenna Minicucci Dabbs
Arjun Mody
Mark Aaron Weiner
Kaplan Hecker & Fink LLP
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Defendant Eric Lesane ("Defendant" or "Lesane") is charged with possession of a

firearm in connection with drug trafficking and following a felony conviction. Currently before

me is Lesane's motion to suppress evidence seized as a result of his arrest and to inspect grand

jury minutes related to his case. Because I find that the Government has met its burden under

either the special needs exception or the probable cause standard, and because inspection of

grand jury minutes is not required under the circumstances presented here, Lesane's motion is DENIED.

## I.    Factual Background and Procedural History

This matter arises out of alleged violations of supervised release in a criminal case pending before Judge Paul G. Gardephe.  In 2013, Lesane pleaded guilty to one count of possession of a firearm with a defaced serial number after a felony conviction.  *See* Judgment, *U.S. v. Eric Lesane*, 12-cr-524-PGG, Doc. 24 ("Judgment").  Lesane had previously been convicted of a felony robbery offense in New York State in 2001, among other offenses.  (*See* PSR ¶¶ 27–56.)[1]  The New York State Division of Parole also advised that Lesane was known to be affiliated with the Crips gang.  (*See id.* ¶ 60.)  Judge Gardephe sentenced Lesane to 94 months' imprisonment to be followed by a three-year term of supervised release.  (*See* Judgment at 2, 3.)  The terms of Lesane's supervised release required, among other things, that:

> The Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in a reasonable manner.  Failure to submit to a search may be grounds for revocation.  The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(*Id.* at 4.)  Lesane was also required to "notify [his] probation officer at least ten days prior to any change in residence." (*Id.* at 3.)  Lesane's supervision commenced on April 6, 2021.  (*See* Warrant Pet. at 1.)[2]  At the start of his supervision, Lesane reported to Probation that he lived at 1725 Purdy Street, Bronx, NY ("1725 Purdy Street").  (*See* Am. VOSR at 2.)[3]

---

[1] "PSR" refers to Lesane's Presentence Investigation Report submitted in *U.S. v. Eric Lesane*, 12-cr-524-PGG.

[2] "Warrant Pet." refers to the Petition for Warrant submitted by the Probation Department to Judge Gardephe on January 24, 2022, filed under seal at Doc. 21-1.

[3] "Am. VOSR" refers to the Second Amended Violation Report submitted by the Probation Department to Judge Gardephe on February 3, 2022, filed under seal at Doc. 21-2.

On November 2, 2021, someone from the New York City Police Department ("NYPD") called Lesane's probation officer and told her that Lesane was "a person of interest as someone in possession of multiple firearms," and that Lesane was living at 2551 Hering Avenue, Bronx, NY ("2551 Hering Avenue"), an address Probation did not know was associated with Lesane. (Warrant Pet. at 1.)  Lesane met with his probation officer on December 16, 2021 and January 10, 2022, and did not report that he had changed addresses.  (*See id.* at 2.)

Probation conducted surveillance at 2551 Hering Avenue on two days in January 2022. On January 10, 2022 at approximately 6 p.m., one group of probation officers surveilled 2551 Hering Avenue while Lesane's probation officer was outside of 1725 Purdy Street.  (*See* Jan. Chrono at 1.)[4]  Lesane's probation officer called and texted Lesane from outside 1725 Purdy Street, and Lesane said he was not at home but that he would have his friend drop him off there. (*See id.*)  The group of probation officers at 2551 Hering Avenue then "observed an individual fitting the physical description" of Lesane leaving the building and getting into a car.  (*Id.*)  That individual was wearing a black jacket and black jeans.  (*See id.*)  Lesane's probation officer then called Lesane, who explained that he was walking to 1725 Purdy Street because his friend had dropped him off a few blocks away.  (*See id.*)  Lesane's probation officer believed Lesane "intentionally" arrived on foot because he was aware of Probation's presence.  (Warrant Pet. at 2.)  Shortly thereafter, Lesane arrived at 1725 Purdy Street wearing a black jacket and black jeans.  (*See* Jan. Chrono at 1.)  Lesane's probation officer surreptitiously took a picture of Lesane and sent the image to the group of officers outside 2551 Hering Avenue, who confirmed that Lesane was the same person they had just seen leave 2551 Hering Avenue.  (*See id.*)

---

[4] "Jan. Chrono" refers to Probation Surveillance Chronology files dated January 10, 2022, and January 20, 2022, filed under seal at Doc. 21-3.

Lesane's probation officer spoke with him outside of 1725 Purdy Street.  While they were talking, Lesane's sister came outside and asked Lesane where he had put her phone.  (*See id.*)  Lesane answered her, and she went back inside.  (*See id.*)  During the conversation with his probation officer, Lesane admitted to "making clothing and advertising to his peers (including other gang members), so they can support his business."  (*Id.*)  Lesane's probation officer asked him to send images of the four custom-made jackets he had described.  (*See id.*)

On January 20, 2022, Lesane's probation officer and another officer again conducted surveillance at 2551 Hering Avenue.  (*See id.* at 2.)  This time, around 5:50 p.m., the probation officers observed Lesane standing in the middle of the street outside 2551 Hering Avenue talking to someone.  (*See id.*)  Lesane was wearing a white t-shirt and jeans.  (*See id.*)  Lesane and the other person entered 2551 Hering Avenue through a door in the alley way.  (*See id.*)  At 6:13 p.m., the officers saw Lesane exit through the side door, "look both ways up the street and return into the building."  (*Id.*)

On January 24, 2022, Lesane's probation officer submitted a violation report to Judge Gardephe and petitioned him to issue an expedited warrant for Lesane's arrest.  (*See generally* Warrant Pet.)  The violation report charged Lesane with two specifications:  (1) "fail[ing] to truthfully answer inquiries of the probation officer, in that he denied any changes in address," and (2) "fail[ing] to notify the Probation Office of a change in residence, in that he failed to report a change in address."  (*Id.* at 1.)  The violation report also described the substance of the call from the NYPD and summarized Probation's subsequent surveillance on January 10 and 20, 2022.  (*See id.*)  Judge Gardephe issued a warrant for Lesane's arrest.  (*See* Warrant.)[5]

On February 1, 2022, the U.S. Marshals arrested Lesane at 2551 Hering Avenue.  (*See*

---

[5] "Warrant" refers to the Arrest Warrant, filed under seal at Doc. 21-4.

Feb. Chrono.)[6]  When probation officers arrived on the scene, they met with NYPD officers who

told the probation officers that the U.S. Marshals had taken Lesane into custody and had given

the NYPD officers personal effects recovered from Lesane upon his arrest, including a set of

keys.  (*See id.*)  The probation officers "opened the door to the residence and proceeded to make

entry on the residence," and "used a key (that was confiscated from [Lesane]) to open a bedroom

off of the kitchen area."  (*Id.*)  The officers recovered, among other things, two rifles, a 9mm

pistol, a semiautomatic shotgun, a "ghost" gun (a gun without a serial number that is assembled

by its user), large quantities of ammunition including high-capacity magazines, a black baseball

bat with barbed wire wrapped around it, what appeared to be several packages of marijuana, and

$10,300.00 in cash.  (*See* Evidence Voucher.)[7]  In the apartment, the officers also found a brown

leather wallet containing, among other things, Lesane's BOP ID card and "other various BOP

information."  (*See id.*)  The Government subsequently produced a second evidence voucher

documenting the seizure and possession of the keys used to open the doors.  (*See* Doc. 24, at 7

n.4; *see also* Doc. 40, at 7:1-8.)

On February 3, 2022, Lesane's probation officer submitted an amended violation report

to Judge Gardephe.  (*See generally* Am. VOSR.)  The amended report included three additional

specifications:  (1) "committ[ing] a federal crime, felon in possession of a firearm, in violation of

18 U.S.C. § 922(g)(1)," (2) "possess[ing] ammunition," and (3) "possess[ing] a dangerous

weapon, specifically a baseball bat modified for the specific purpose of causing bodily injury in

that it was wrapped in barbed wire."  (*Id.* at 3.)  On that same date, Lesane was separately

---

[6] "Feb. Chrono." refers to the Probation Search Chronology file dated February 1, 2022, filed under seal at Doc. 21-5.

[7] "Evidence Voucher" refers to the United States Probation Office Southern District of New York Evidence/Property Form, filed under seal at Doc. 21-6.

charged in a criminal complaint with possession of firearms following a felony conviction, in violation of 18 U.S.C. § 922(g)(1).  (Doc. 1.)  On February 17, 2002, an indictment was filed charging Lesane in three counts:  (1) possession of firearms following a felony conviction, in violation of 18 U.S.C. § 922(g)(1); (2) distribution and possession with intent to distribute marijuana for remuneration, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D); and (3) possession of firearms in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(a)(A)(i).  (Doc. 5.)  On April 11, 2022, the case was reassigned to me.

On May 11, 2022, Lesane filed a motion to suppress all evidence seized as a result of his arrest and to inspect his grand jury minutes.  (Doc. 20 ("Def.'s Mem.").)  On May 25, 2022, the Government filed an opposition.  (Doc. 24 ("Gov't Opp.").)  On June 17, 2022, Lesane filed a reply.  (Doc. 33 ("Def.'s Reply").)  On July 7, 2022, I held oral argument on the matter.  (*See* Doc. 40 ("Tr.").)  On July 28, 2022, the parties filed supplemental briefing.  (Doc. 42 ("Def.'s Supp. Br."); Doc. 43 ("Gov't Supp. Br.").)  On August 5, 2022, I held a status conference, and thereafter, Lesane filed a second supplemental briefing.  (Doc. 47 ("Def.'s Second Supp. Br.").)  I adjourned a conference scheduled for September 7, 2022, so I could complete my review of the motion papers and issue this Opinion & Order.  (Doc. 48.)

## II.   Discussion

The essence of Lesane's argument is that "there was no probable cause to believe that he had changed his residence," and therefore that his arrest was unlawful, and that the fruits of that arrest—including the keys that allowed the search of 2551 Hering Avenue—must be suppressed. (Def.'s Mem. at 11.)  The Government argues in opposition that the arrest was lawful, and regardless, that "the search of his apartment at 2551 Hering Avenue was authorized under the search condition to Lesane's supervised release."  (Gov't Opp. at 16.)  The Government further argues that, even if there were insufficient probable cause, the good faith exception would apply.

(*See id.*)  Separately, Lesane argues that he is entitled to inspect his grand jury minutes because statements in the criminal complaint and descriptions of the evidence seized "are called into question by contradictory information also provided by the government in connection with this case." (Def.'s Mem. at 22; *see also id.* at 11–12, 22–24.)  The Government argues "[n]othing in Lesane's motion warrants the extraordinary remedy of review of the grand jury minutes." (Gov't's Opp. at 23.)

I first consider whether the search of 2551 Hering Avenue was justified under the search condition and the special needs exception.  I find that the special needs exception applies, and that the search was reasonable under that exception.  I also consider whether the Government has demonstrated probable cause, and I find that it has.  In the alternative, assuming that Lesane's arrest was illegal, I consider whether the good faith exception would apply, and I find that it would.  Finally, I consider whether Lesane has demonstrated any particularized need to inspect the grand jury minutes, and I find that he has not.

### A.   *Special Needs Exception and Supervised Release Search Condition*

#### 1.   **Applicable Law**

The Constitution "does not proscribe all searches and seizures, but only those that are unreasonable." *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989).  While "[g]enerally, a seizure amounting to an arrest 'is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause,'" the law does allow for "limited exceptions." *Jones v. County of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019) (quoting *Skinner*, 489 U.S. at 619).  "The Supreme Court has acknowledged the need for exceptions to the warrant and probable cause requirements of the Fourth Amendment where an administrative agency has 'special needs, beyond the normal need for law enforcement.'" *United States v. Reyes*, 283 F.3d

446, 461 (2d Cir. 2002) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)). The Second Circuit has recognized that federal supervised release is "a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Id.* (internal citation omitted).

"Probationers, parolees, and persons subject to supervised release have 'significantly diminished' expectations of privacy." *United States v. Lambus*, 897 F.3d 368, 402 (2d Cir. 2018). Additionally, "[p]ersons on supervised release who sign waivers manifest an awareness that supervision can include intrusions into their residence and, thus, have a severely diminished expectation of privacy." *United States v. Edelman*, 726 F.3d 305, 310 (2d Cir. 2013) (internal quotation marks omitted). Accordingly, "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *United States v. Knights*, 534 U.S. 112, 121 (2001). Reasonable suspicion requires "possession of specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *United States v. Ojudun*, 915 F.3d 875, 882 (2d Cir. 2019) (internal quotation marks omitted). Reasonableness "is measured in objective terms by examining the totality of the circumstances." *Id.* at 883 (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

Moreover, under the special needs exception, "a parole officer may search a parolee so long as the search is reasonably related to the performance of the officer's duties." *United States v. Braggs*, 5 F.4th 183, 184 (2d Cir. 2021). "Among these duties are the supervision, rehabilitation, and societal reintegration of the parolee, as well as assuring that 'the community is not harmed by the parolee's being at large.'" *Id.* at 187 (quoting *Griffin v. Wisconsin*, 483 U.S.

868, 873 (1987).)  In this context, the Second Circuit has held that not even "reasonable suspicion" is required, "so long as the search is reasonably related to the performance of the officer's duties" of supervision.  *Id.* at 188 (reversing and remanding district court decision to suppress a search conducted by parole officers based on an anonymous tip that a parolee may have guns in his house); *see also Reyes*, 283 F.3d at 462 ("[P]robation officers conducting a *home visit* are not subject to the reasonable suspicion standard. . . .").

## 2. Application

The search of 2551 Hering Avenue was justified under the search condition of Lesane's supervised release, which I interpret pursuant to the special needs exception.  The terms of Lesane's supervised release require that Lesane "submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found."  (Judgment at 4.)  Lesane argues that the Government has not demonstrated even a "reasonable belief" that Lesane changed his residence, and that the Government may need to make a "greater showing" than "reasonable belief" "before probation officers can search a location the supervisee does not concede is in fact his residence or a location under his control." (Def.'s Supp. at 1, 6.)  Lesane is wrong.  I find that Lesane's interpretation of his search condition is strained and at odds with Second Circuit law, and that the Government has met its burden under the special needs exception.

As an initial matter, in order for the special needs exception to be effective, the "reasonable belief" standard must apply as to the supervisee's suspected residence, even if the supervisee contests that the location of the search is his residence.  Otherwise, a probation officer would first need to demonstrate probable cause that the location was the supervisee's residence,

and then demonstrate a reasonable belief that contraband was in the location.  That reading of the search condition leads to counterintuitive and counterproductive results.  For example, if a probation officer were solely investigating whether a location was a supervisee's residence, the officer would only be required to demonstrate a reasonable belief that the location would contain evidence that the supervisee was living there (since moving without notifying Probation is itself a violation).  Under Lesane's theory, if the probation officer were also investigating whether there was contraband in the location, the officer would need to demonstrate probable cause that the location was the supervisee's residence, and then demonstrate the lessor "reasonable belief" that there was contraband in the location.  This reading would severely hamper Probation's supervisory powers by making it more difficult for Probation to investigate any location besides the place a supervisee has reported as his residence.  As a logical matter, the "reasonable belief" standard must apply to both inquiries.  *Cf. United States v. Sanchez*, No. 13-CR-00065 (PMH), 2022 WL 428331, at *6 (S.D.N.Y. Feb. 11, 2022) (interpreting the search condition to include a storage unit as one of the "other premises under [the supervisee's] control").

Further, the Second Circuit has made clear that under the special needs exception, "a search of a [supervisee] is permissible so long as it is reasonably related to the [supervising] officer's duties . . . [including] the supervision, rehabilitation, and societal reintegration of the [supervisee], as well as assuring that the community is not harmed by the [supervisee's] being at large."  *Braggs*, 5 F.4th at 186–87; *see also United States v. Newton*, 369 F.3d 659, 666 (2d Cir. 2004) (finding "once the parole officers in this case received information that [a parolee] had a gun at his residence and had threatened his mother and her husband, it was a reasonable exercise of their parole duty to search [the parolee's mother's] apartment"); *United States v. Barner*, 666 F.3d 79, 85 (2d Cir. 2012) (finding that where a parole officer "had received information that [a

parolee] (1) possessed a gun, and (2) had fired it at the complainant," "it was clearly reasonable for [the parole officer] to investigate the accusations further"). Lesane's probation officer has a duty to ensure that Lesane is not hiding contraband on "his person," in his "residence," or at "any other premises under his control." (Judgment at 4.) When Probation has a reasonable belief that a supervisee has moved residences in an attempt to evade supervision, search of the suspected new residence is at the heart of Probation's duty, and must therefore be permissible.

Here, Probation had "specific and articulable facts which, taken together with rational inferences from those facts" reasonably warranted Lesane's arrest for failing to truthfully answer inquiries of his probation officer and failing to notify the Probation Office of a change in residence. *Ojudun*, 915 F.3d at 882. Namely, Probation had information from the NYPD that Lesane was living at 2551 Hering Avenue. (*See* Warrant Pet. at 1.) Probation then conducted its own surveillance and saw Lesane at 2551 Hering Avenue on two different dates. (*See id.* at 2; *see generally* Jan. Chrono.) It is improbable that Lesane would been seen, on two random days, at 2551 Hering Avenue—where the NYPD reported he lived—if he had no connection to that address. Nevertheless, Lesane's probation officer met with Lesane twice, and Lesane did not report a change in residence. (*See* Warrant Pet. at 2.) Indeed, Lesane actively concealed his whereabouts from Probation, by being dropped off within walking distance of 1725 Purdy Street. (*See id.*) These facts give rise to the rational inference that Lesane had moved to 2551 Hering Avenue without telling Probation.

Although Lesane tries to suggest that the first surveillance conducted by Probation did not identify him, (*see, e.g.*, Def.'s Mem. at 4, 14, 15), the Probation Surveillance Chronology indicates otherwise. The group of probation officers at 2551 Hering Avenue—who presumably did not know Lesane personally—"observed an individual fitting the physical description" of

Lesane leaving the building wearing a black jacket and black jeans. (Jan. Chrono at 1.) Within minutes, Lesane's probation officer then saw Lesane at 1725 Purdy Street wearing a black jacket and black jeans. (*See id.*) Lesane's probation officer sent a surreptitious photo of Lesane to her colleagues, and the group of probation officers at 2551 Hering Avenue "positively confirmed that [Lesane] fit the physical description and clothing of the individual [] who left 2551 Hering Ave in the vehicle." (*Id.*)

Importantly, Lesane's probation officer also knew Lesane was on supervised release for his conviction of possession of a firearm after a felony conviction, and that Lesane had previously been convicted of various offenses, including but not limited to robbery, attempted robbery, criminal possession of a firearm, and assault. (*See* PSR at ¶¶ 27–56.) Lesane's probation officer further knew Lesane was affiliated with the Crips gang, and additional inquiries suggested that Lesane had recently been "making clothing and advertising to his peers (including other gang members)." (Jan. Chron at 1.) Accordingly, it was reasonable for the probation officer to consider the totality of the circumstances in evaluating the credibility of the information received from NYPD, and to infer that Lesane had moved to 2551 Hering Avenue in an attempt to hide contraband from Probation.

Therefore, I find that the search of 2551 Hering Avenue was permissible under the special needs exception.

### B. *Probable Cause*

#### 1. **Applicable Law**

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In determining whether probable

cause exists to support the issuance of a warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The experience of the law enforcement agents involved in preparing the warrant application is particularly relevant to the analysis, as "experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004); *see also United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) ("A number of cases have ruled that an agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application."). Ultimately, the probable cause determination is a "flexible common-sense" inquiry based on the totality of the circumstances. *Texas v. Brown*, 460 U.S. 730, 742 (1983).

In reviewing a magistrate judge's probable cause determination, reviewing courts must give "great deference" to the magistrate's findings. *Gates*, 462 U.S. at 236 (internal quotation marks omitted); *see also United States v. Ventresca*, 380 U.S. 102, 109 (1965) ("Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."). "[S]o long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

## 2.    Application

As noted above, the special needs exception applies to this case.  However, I also consider whether the Government has met its burden under the probable cause standard, and I find that it has.

First, I find that Lesane downplays the significance of the information Probation received from the NYPD.  The NYPD told Probation that Lesane was living at 2551 Hering Avenue and that Lesane was "a person of interest as someone in possession of multiple firearms."  (Warrant Pet. at 1.)  Black's Law Dictionary defines "person of interest" as "[p]olice jargon" for "[s]omeone who is the subject of a police investigation or wanted for questioning but who has not been identified by investigators as being suspected of committing the crime itself."  *See* PERSON, Black's Law Dictionary (11th ed. 2019).  Therefore, NYPD's use of the term "person of interest" implies that NYPD had been engaged in a larger investigation, which had touched on Lesane.  Accordingly, courts have treated tips from law enforcement that someone is a "person of interest" as carrying more weight than a mere anonymous tip.  *See United States v. Townsend*, 371 F. App'x 122, 124–25 (2d Cir. 2010) (calling a case "a far cry from the anonymous phone call" where "both the Bronx District Attorney's office and the New York Police Department confirmed that [a supervisee] was a person of interest in an ongoing investigation of an unsolved robbery and homicide," and affirming the denial of a suppression motion); *see also United States v. Critten*, No. 20-3703, 2021 WL 4256584, at *2 (2d Cir. Sept. 20, 2021) (finding reasonable suspicion for a traffic stop where, among other things, the officer "had already received information from [a detective] that the passenger may be a person of interest").  The information provided by the NYPD—that Lesane was someone in possession of multiple firearms—is also consistent with Lesane's criminal history, which Judge Gardephe knew as the sentencing judge

for Lesane's underlying offense. (*See* Warrant Pet. at 1 (indicating that the "Original Offense" was "Felon in Possession of a Firearm with a Defaced Serial Number[]").)

Second, Probation did not solely rely on the NYPD information, but conducted its own investigation at the location mentioned by the NYPD on two separate occasions. (*See* Warrant Pet. at 2.) "Anonymous tips suffice to establish probable cause if they are corroborated by independent police work." *United States v. Fama*, 38 F. App'x 70, 72 (2d Cir. 2002) (citing *United States v. Wagner*, 989 F.2d 69, 72–73 (2d Cir. 1993). Both the surveillance efforts corroborated the information provided by the NYPD that Lesane was residing at 2551 Hering Avenue. The two investigations were conducted on apparently random days, and both resulted in sightings of Lesane. (*See* Warrant Pet. at 2.)[8] Accordingly, a finding of probable cause is reasonable and more than adequately demonstrated based on Probation's surveillance.

Lesane counters that "[t]here are any number of possibilities" for why Lesane was at 2551 Hering Avenue both times Probation conducted surveillance. (Def.'s Mem. at 16 ("Mr. Lesane could have been visiting a friend or acquaintance at the building. He could have been dropping something off for someone or running an errand located in or associated with that building.").)[9] However, "[i]n order to establish probable cause, it is not necessary to make a prima facie showing of criminal activity or to demonstrate that it is more probable than not that a crime has been or is being committed." *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987) (internal quotation marks omitted). "Rather, probable cause for arrest 'exists where the facts and circumstances . . . are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Id.* (quoting *Brinegar v. United States*,

---

[8] Notably, the U.S. Marshals ultimately arrested Lesane in the vicinity of 2551 Hering Avenue. (*See* Feb. Chrono.)

[9] Although it is the Government's burden, I note that Lesane did not submit an affidavit from anyone living in or around 2551 Hering Avenue concerning the reason for his presence at 2551 Hering Avenue.

338 U.S. 160, 175–76 (1949)).  The possibility of alternative explanations for Lesane's repeated presence at 1725 Purdy Street does not extinguish the probable cause for his arrest.

Finally, Lesane's own actions support a finding of probable cause.  On January 10, 2022, Lesane's probation officer called Lesane "and informed that [she] was attempting to conduct a home visit."  (Warrant Pet. at 2.)  Lesane responded that he was not at home but "that a friend would drop him off."  (*Id.*)  Lesane apparently did not disclose his location to Probation. Probation officers on surveillance "observed an individual believed to be Mr. Lesane exit 2551 Hering Avenue and enter a vehicle."  (*Id.*).  Contrary to what Lesane had told his probation officer, Lesane "arrived at the residence on foot, indicating he exited the vehicle on a different street."  (*Id.*)  Lesane apparently gave no reason why his friend did not drive him to his purported residence as Lesane had told the officer he would.  These actions were clearly suspicious and justified the inference in the Petition that "Mr. Lesane was aware of this officer's presence near his residence, and it is believed that he exited the vehicle at a different location intentionally." (*Id.*)

Accordingly, "given all the circumstances set forth in the affidavit," Judge Gardephe was correct to find "a fair probability" that Lesane had violated the conditions of his supervised release by failing to truthfully answer inquiries of his probation officer and failing to notify Probation of a change in residence.  *Gates*, 462 U.S. at 238.  Therefore, the Government demonstrated probable cause.[10]

---

[10] Because I find probable cause, I need not reach the issue of inevitable discovery.

### C. *Good Faith*

#### 1.     **Applicable Law**

"The fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009).  The Supreme Court has explained that application of the exclusionary rule has always been its "last resort," not its "first impulse."  *Id.*  "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Id.* at 144.

Under the good faith exception, the exclusionary rule does not apply to "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant."  *United States v. Leon*, 468 U.S. 897, 922 (1984).  "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant."  *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (internal quotation marks omitted).  "In assessing whether it has carried that burden," courts must be "mindful that, in *Leon*, the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within its protection."  *Id.*; *see also Leon*, 468 U.S. at 922 ("Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." (internal quotation marks omitted)).  Thus, "[m]ost searches will be upheld."  *United States v. Rickard*, 534 F. App'x 35, 37 (2d Cir. 2013) (summary order).  As the Second Circuit has explained:

> It was against this presumption of reasonableness that the Supreme Court identified four circumstances where an exception to the exclusionary rule would not apply: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is

so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*Clark*, 638 F.3d at 100 (internal quotation marks omitted).

## 2.  Application

Lesane argues the good faith exception does not apply. (*See* Def.'s Reply at 5–7.) Lesane does not contend that Judge Gardephe "wholly abandoned his . . . judicial role," and concedes that the warrant is not "so facially deficient that reliance upon it is unreasonable." *Clark*, 638 F.3d at 100. (*See* Def.'s Supp. at 7; Tr. 37:25-38:3.)  Instead, Lesane argues that the Probation Department knowingly misled Judge Gardephe by acting with reckless disregard for the truth, and that "the warrant was so deficient in its finding of probable cause that relying on it was unreasonable." (Def.'s Reply at 6.)  Assuming that Lesane's arrest was illegal—which it was not—I find that the U.S. Marshals used "objectively reasonable reliance" on a facially valid arrest warrant, so the evidence obtained as a result of the arrest should not be suppressed. *Leon*, 468 U.S. at 922.

Most importantly, I find no evidence that Probation "knowingly misled" Judge Gardephe. *Clark*, 638 F.3d at 100.  In order to show that a magistrate has been knowingly misled, a defendant must "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *see also United States v. Burgos*, No. 20-CR-182 (VEC), 2021 WL 3788962, at *8 (S.D.N.Y. Aug. 25, 2021) ("[C]ourts consider whether the issuing magistrate judge has been knowingly misled pursuant to the . . . *Franks* standard."); *United States v. Correas*, 419 F.3d 151, 155 (2d Cir. 2005) ("To suppress evidence obtained on the basis of false statements or omissions in an agent's affidavit, a defendant must

show (1) that the inaccuracies were the product of a Government Special Agent's deliberate

falsehood or reckless disregard for the truth rather than innocent mistake, and (2) that, after

setting aside the falsehoods, what remains of the warrant affidavit is insufficient to support a

finding of probable cause." (internal citations omitted).) In other words, Lesane must identify a

false statement included in the Petition; lack of investigation alone does not amount to bad faith.

Lesane does not identify any lies or deceptive statements made in the Petition.[11] Rather, Lesane

argues in a conclusory fashion that Probation acted with reckless regard for the truth by failing to

present enough evidence to demonstrate probable cause. (*See, e.g.*, Def.'s Mem. at 18–19; Def.'s

Reply at 6; Def.'s Supp. at 7.) If this were the law, there would be no good faith exception at all,

since by definition, the good faith exception only applies after a warrant has already been

invalidated for lack of probable cause.[12]

For the reasons above, I find that there was probable cause here. Accordingly, the

warrant could not have been "so lacking in indicia of probable cause as to render reliance upon it

---

[11] All that Lesane suggests is that his sister asking him about her phone somehow indicates that he did not move, and that the Government should have disclosed this information. (*See* Def.'s Mem. at 19 n.10; Def.'s Reply at 1, 6 n.5; Def.'s Supp. at 7.) However, the exchange between Lesane and his sister does not preclude the possibility that he had moved. Notably, the residence at 1725 Purdy Street is a multi-story building with over 3,000 units. *See* 1725 Purdy Street, RealtyHop, https://www.realtyhop.com/building/1725-purdy-street-bronx-ny-10462 (last visited Aug. 31, 2022). Moreover, Probation is not required to assume that Lesane's sister coincidentally, without being prompted, happened to walk out of 1725 Purdy Street at the exact time Lesane was meeting with his probation officer, and therefore conclude that Lesane still lived there. Although it is the Government's burden, I also note that Lesane did not submit an affidavit from his sister stating that on January 10, 2022, Lesane lived at 1725 Purdy Street.

[12] Lesane argues that in *United States v. Rutherford*, 71 F. Supp. 3d 386, 392 (S.D.N.Y. 2014), now Chief Judge Laura Taylor Swain found the "good faith exception did not apply where [the] warrant application contained insufficient indicia of illegality and officers acted 'recklessly or negligently' by not providing the issuing court more information." (Def.'s Supp. at 7.) The warrant application in *Rutherford* "sought authorization to search for and seize 'two semi-automatic firearms' which were alleged to have been 'unlawfully possessed,'" but the officer's "affidavit did not proffer any legal or factual basis for his assertion that the weapons were 'unlawfully possessed.'" *Id.* at 389. Here, in contrast, the warrant petition provided both a legal and factual basis for Probation's belief that Lesane had failed to comply with two conditions of supervision. (*See generally* Warrant Pet.) Separately, Judge Swain found that the officers in *Rutherford* had also "coerced" the defendant's mother into consenting to a search by threatening to have her evicted from public housing if she did not sign the form; obviously, nothing of the sort happened here. *Rutherford*, 71 F. Supp. 3d at 391, 394.

unreasonable." Therefore, even if the warrant were invalid, the good faith exception would apply.

### D. *Grand Jury Minutes*

#### 1. **Applicable Law**

"It is settled law that 'grand jury proceedings are accorded a presumption of regularity.'" *United States v. Helbrans*, 547 F. Supp. 3d 409, 434 (S.D.N.Y. 2021) (quoting *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991)).   While Federal Rule of Criminal Procedure 6(e)(3)(C)(i) allows a court to order disclosure of grand jury materials under certain circumstances, courts are prohibited from "granting access to grand jury materials unless 'particularized need' is shown by the requesting party." *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 32 (2d Cir. 1981).   Such a particularized need might include "some grossly prejudicial irregularity or . . . compelling necessity that outweighs the Government's and the Grand Jury's substantial interest in secrecy." *Helbrans*, 547 F. Supp. 3d at 434 (internal quotation marks omitted).   "A review of grand jury minutes should not be permitted without concrete allegations of Government misconduct." *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994).   Because "[b]reaking grand jury secrecy constitutes 'extraordinary relief,'" *Helbrans*, 547 F. Supp. 3d at 434 (quoting *United States v. Shaw*, No. S1 06 CR 41, 2007 WL 4208365, at *6 (S.D.N.Y. Nov. 20, 2007)), "the discretion of a trial court in deciding whether to make public the ordinarily secret proceedings of a grand jury investigation is one of the broadest and most sensitive exercises of careful judgment that a trial judge can make," *In re Petition of Craig*, 131 F.3d 99, 104 (2d Cir. 1997).

### 2.    Application

There is no basis for Defendant's request.  Defendant "recogniz[es] that the bar to overcome grand jury secrecy is a high one," but nevertheless "respectfully submits that this is such a case in which a limited disclosure of the grand jury minutes would help determine whether a 'possible injustice' has been done here." (Def.'s Mem. at 24.)  While Defendant identifies purported "contradictions" and  "discrepancies" in discovery materials, (*see id.* at 22–25), Defendant does not explain how those "inconsistencies" amount to "concrete allegations of Government misconduct," *Leung*, 40 F.3d at 582.  Mere "speculat[ion] that the government may have misled the grand jury . . . is insufficient to overcome the presumption in favor of grand jury secrecy." *United States v. Chang*, 574 F. Supp. 3d 94, 99 (E.D.N.Y. 2021) (collecting cases).  Disclosure of grand jury remedies is an extraordinary remedy, and the law does not require disclosure under the circumstances presented here.

### III.    Conclusion

For the foregoing reasons, Defendant Lesane's motion to suppress evidence seized during a search by Probation and to inspect his grand jury minutes is DENIED.  The Clerk of Court is respectfully directed to file this Opinion & Order under seal so that it is viewable to only the Court and the parties.  The parties are ordered to meet and confer and, within thirty (30) days of the entry of this Order, submit proposed redactions to this Opinion & Order so that it can be filed

publicly on the docket.  The Clerk of Court is respectfully directed to close the open motion at

Doc. 19.

SO ORDERED.

Dated: September 13, 2022
      New York, New York

                                       Vernon S. Broderick
                                       United States District Judge