```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
UNITED STATES OF AMERICA,                                        :
                                                                 :
        -v-                                                      :
                                                                 :           22-cr-110 (LJL)
ERIC LESANE,                                                     :
                                                                 :           OPINION AND ORDER
                                     Defendant.                  :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/19/2023

LEWIS J. LIMAN, United States District Judge:

Defendant Eric Lesane ("Defendant" or "Lesane") moves, pursuant to Federal Rule of Criminal Procedure 29, for a judgment of acquittal. Dkt. No. 114. Defendant also moves for reconsideration of the orders of this Court, *see* Dkt. Nos. 80, 89, 93, denying his motion to suppress evidence seized during a search conducted on January 24, 2022 (the "Search"), of his apartment at 2551 Hering Avenue in the Bronx, New York (the "Premises"). Dkt. No. 114. For the following reasons, the motions are denied.

## BACKGROUND

Defendant was indicted on February 17, 2022, on charges of (1) possession of firearms following a felony conviction in violation of 18 U.S.C. § 922(g)(1) ("Count One"); (2) distribution and possession with intent to distribute marijuana for remuneration, in violation of 21 U.S.C. § 841(d)(1)(D) ("Count Two'); and (3) possession of firearms in connection with the drug trafficking offense charged in Count Two, in violation of 18 U.S.C. § 924(c) ("Count Three"). Dkt. No. 5 ("Indictment"). Prior to trial, the Government elected not to proceed on Count Two of the Indictment and to only present evidence on Counts One and Three. *See* Trial Transcript ("Trial Tr.") 2. On May 11, 2022, Defendant moved to suppress evidence seized during the Search and to inspect grand jury minutes. The Honorable Vernon S. Broderick denied

that motion on September 13, 2022 in a sealed opinion and order, Dkt. Nos. 51, 52, which the Court unsealed on January 11, 2023, Dkt. No. 80.  At a hearing on September 21, 2022, Defendant indicated that he wished to relieve his attorney as his counsel and to represent himself *pro se*.  Dkt. No. 57 at 16.  On October 21, 2022, Judge Broderick held a hearing and found that Defendant had voluntarily and knowingly waived his right to be represented by counsel and voluntarily and knowingly elected to represent himself.  Dkt. No. 59 at 21.

Defendant, *pro se*, filed a motion for reconsideration of Judge Broderick's suppression order on December 19, 2022.  Dkt. No. 63.  Judge Broderick denied this motion on January 19, 2023.[1]  The Court distributed a copy of Judge Broderick's opinion and order denying the motion for reconsideration to the parties at the final pretrial conference held that same day.[2]  *See* Dkt. No. 96 at 2.  At the final pretrial conference, Defendant argued that the Court impermissibly rendered its decision on the motion for reconsideration without considering his reply memorandum, which had not been delivered to the Court before rendering its decision.  *Id.* at 4–5.  Defendant provided the Court with a copy of his reply memorandum at the final pretrial conference, which the Court then docketed.  Dkt. No. 92; Dkt. No. 96 at 50–51.  The Court reviewed the reply memorandum and heard oral argument and concluded that it did not provide a basis for reconsidering Judge Broderick's opinion because the "arguments made by Defendant were all contained in the prior briefs."  Dkt. No. 93 at 2.  The Court observed that "[t]o the extent that Defendant was prejudiced because the Court did not have the benefit of his reply memorandum when it rendered its decision, I have now reviewed that reply memorandum and have concluded that it does not raise any issues that would support reconsideration."  *Id.*  At the

---

[1] This case was assigned to the Honorable Lewis J. Liman on January 9, 2023, but Judge Broderick retained control over certain pretrial matters, including the motion for reconsideration.
[2] The copy that was mailed by the Clerk of Court to Defendant was returned to sender.

final pretrial conference, the Court precluded Defendant from suggesting to the jury that the search was unlawful, Dkt. No. 96 at 48–49, but before trial the Court stated that "[i]f there is something that comes out of the cross-examination that would provide cause for reconsideration of the motion to suppress, I will be prepared to hear your argument with respect to that" after the close of trial.  Trial Tr. 13.

On January 30, 2023, after a one-week trial, Defendant was convicted on Counts One and Three of the original Indictment.  Dkt. No. 98.  At the close of the Government's evidence, Defendant moved for a judgment of acquittal with respect to both Counts One and Three pursuant to Federal Rule of Criminal Procedure 29(a).  Trial Tr. 563–65.  The Court denied the motion as to both counts.  *Id.* at 566–67.  After trial, the Court set a briefing schedule for post-trial motions.  *See* Minute Entry, January 30, 2023.  On March 1, 2023, Lesane submitted his motions for a judgment of acquittal and reconsideration of the motion to suppress and a memorandum in support of the motions, Dkt. No. 114, to which the Government responded on March 22, 2023, Dkt. No. 117.  Lesane submitted a reply memorandum of law in further support of his motions on April 12, 2023.  Dkt. No. 121.

## DISCUSSION

Defendant's motion, contained in a single memorandum of law, raises two principal issues: (1) whether evidence obtained during the search of the Premises should have been suppressed; and (2) whether there exists sufficient evidence from which the jury could have found him guilty of Counts One and Three of the Indictment.  The Court first addresses the question of suppression and then addresses the sufficiency of the evidence.

I.   **Defendant's Motion for Reconsideration of the Denial of His Motion to Suppress**

The focus of Defendant's motion is addressed to his argument that evidence from the search of the Premises was improperly admitted at trial.  That argument is best understood as a

motion for reconsideration of the Court's prior decisions on Defendant's motion to suppress. *Cf. United States v. Wilson*, 2016 WL 8671072 (N.D.N.Y. Apr. 14, 2016) (holding that the sole ground for a post-trial motion under Rule 29(c) is that the evidence was insufficient to sustain the conviction and that the rulings on evidentiary issues are not the proper province of motions under Rule 33); *United States v. Soto*, 2014 WL 1694880, at &7 (S.D.N.Y. Apr. 28, 2014) (holding that Rule 33 is not the proper vehicle to relitigate trial court's evidentiary decisions in the absence of "manifest injustice"). The Court is permitted, but not required, to entertain a post-trial motion to reopen a suppression hearing based on evidence adduced at trial. *See, e.g.*, *United States v. Rios*, 500 F. App'x 27, 28 (2d Cir. 2012) (reviewing district court's denial of a motion to reopen the suppression hearing based on "new evidence that came to light only after the suppression hearing"); *United States v. Oquendo*, 192 F. App'x 77, 80 (2d Cir. 2006) (same); *United States v. Bayless*, 201 F.3d 116, 131 (2d Cir. 2000) (adopting abuse of discretion standard for motion to reopen suppression hearing); *see also* 3 Wayne R. LaFave et al., Crim. Proc. § 10.6(c) (4th ed. 2022); *see also United States v. Kelly*, 2021 WL 431030, at *1 (E.D.N.Y. Feb. 8, 2021) ("Although the Federal Rules of Criminal Procedure do not provide for reconsideration motions, 'such motions are tacitly accepted in criminal cases in [the Southern] District [of New York] by virtue of Local Crim. R. 49.1(d).'" (quoting *United States v. Baldeo*, 2015 WL 252414, at *1 (S.D.N.Y. Jan. 20, 2015), *aff'd*, 615 F. App'x 26 (2d Cir. 2015))).

The standard for granting a motion for reconsideration is strict. "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources.'" *Rouviere v. DePuy Orthopaedics, Inc.*, 2021 WL 5854283, at *1 (S.D.N.Y. Dec. 9, 2021) (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). The Local Rules of this District permit a

party to file a motion for reconsideration, "setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Local Rule of Criminal Procedure 49.1(d); *see United States v. Gluzman*, 2020 WL 6526238, at *2 (S.D.N.Y. Nov. 5, 2020). However, "a court should grant a motion for reconsideration 'only if the moving party can point to controlling decisions or data that the court overlooked' and 'might reasonably be expected to alter the conclusion reached by the court.'" *United States v. Fnu Lnu*, 2015 WL 13307424, at *1 (S.D.N.Y. Nov. 13, 2015) (quoting *United States v. Smith*, 2012 WL 1700465, at *3 (S.D.N.Y. May 15, 2012)); *see also Baldeo*, 2015 WL 252414, at *1 (noting that courts in this District generally adopt "the standard for civil reconsideration motions"). The movant must "point to matters . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18C C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4478).

Lesane has repeatedly raised the issues he raises now regarding his arrest and the search of the Premises. He first moved to suppress evidence seized as a result of his arrest and the subsequent search of the Premises on May 11, 2022. Dkt. No. 19. In that motion, he argued then that he was arrested without probable cause, *see* Dkt. No. 20 at 13–19, and that the search of his person and subsequent search of the Premises was unlawful, *see id.* at 20–22. He thus argued that evidence obtained through the search must be suppressed because the U.S. Probation Department ("Probation Department" or "Probation") lacked a reasonable basis to believe (1) that he had violated the terms of his supervised release by changing his residence and failing to

report the change or (2) that a search of his person or the Premises would result in the location of evidence of such a violation.  *See id.* at 21.  He focused his argument then, as he does now, on the view that the three pieces of information in the possession of the Probation Department and that served as the basis for his arrest warrant—"(1) an unsourced tip from the New York City Police Department (the 'NYPD'), (2) one occasion on which an individual 'believed to be,' but not confirmed as, Mr. Lesane was observed in the vicinity of his purported new residence, and (3) a second occasion, ten days later, of Mr. Lesane at the same address"—told the district judge who issued the warrant "virtually nothing about Mr. Lesane's actual residence:"  *Id.* at 1.  Judge Broderick, to whom the case was then assigned, denied the motion to suppress on the alternative grounds that Defendant's arrest and the subsequent search were supported by probable cause and were lawful under the "special needs" exception to the probable cause requirement under the Fourth Amendment.  *See* Dkt. No. 80 at 7–16.  He also found that suppression would be inappropriate under the "good faith" exception to the exclusionary rule.  *Id.* at 17–20.

In his written opinion denying the motion to suppress, Judge Broderick described the operative facts, each of which is either undisputed here or was proven at trial.  At the time of his arrest and the search of the Premises, Lesane was on supervised release having pled guilty in 2013 before the Honorable Paul G. Gardephe to one count of possession of a firearm with a defaced serial number after a felony conviction.  *See* Judgement, *United States v. Eric Lesane*, 12 Cr. 524 (PGG) (S.D.N.Y. May 29, 2012), Dkt. No. 24.  Judge Gardephe sentenced Lesane to 94 months' imprisonment to be followed by a three-year term of supervised release.  *Id.* at 2, 3.  The terms of Lesane's supervised release required, among other things, that:

> The Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and

>in a reasonable manner. Failure to submit to a search may be grounds for revocation. The Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

*Id.* at 4. Lesane was also required to "notify [his] probation officer at least ten days prior to any change in residence." *Id.* at 3. Lesane's supervision commenced on April 6, 2021, and, at the start of his supervision, he reported to Probation that he lived at 1725 Purdy Street, Bronx, NY ("1725 Purdy Street"). Dkt. No. 80 at 2.

On November 2, 2021, Lesane's Probation officer received a call from the NYPD informing her that Lesane was "a person of interest as someone in possession of multiple firearms" and that he was living at the Premises, an address Probation did not know was associated with Lesane. *Id.* at 3. Probation conducted surveillance at the Premises on two days in January 2022. On January 10, 2022, at approximately 6:00 p.m., one group of officers surveilled the Premises while Lesane's Probation officer was outside of 1725 Purdy Street. *Id.* On that occasion, Lesane's Probation officer called and texted Lesane from outside 1725 Purdy Street and Lesane responded that he was not at home but that he would have his friend drop him off there. *Id.* The officers surveilling the Premises then "observed an individual fitting the physical description" of Lesane leave the building where the Premises was located and get into a car. *Id.* Shortly thereafter Lesane's Probation officer observed Lesane—who was wearing the same outfit that the individual leaving the Premises was wearing—arrive on foot at 1725 Purdy Street. *Id.* Lesane's Probation officer surreptitiously took a picture of Lesane and sent the image to the officers outside the Premises, who confirmed that Lesane was the same person they had seen leave the Premises. *Id.*

On January 20, 2022, Lesane's Probation officer and another Probation officer again conducted surveillance at the Premises. *Id.* at 4. At approximately 5:50 p.m., the Probation officers observed Lesane standing in the middle of the street outside the Premises talking to

7

another individual, and then saw him enter the Premises with the other person through a side door.  *Id.*  Shortly thereafter, the Probation officers witnessed Lesane exit through the side door, look both ways up the street, and then return into the building.  *Id.*  Lesane had previously met with his Probation officer on December 16, 2021 and January 10, 2022, and did not report that his address had changed.  *Id.* at 3.

On January 24, 2022, Lesane's Probation officer submitted a violation report to Judge Gardephe and petitioned him to issue an expedited warrant for Lesane's arrest.  *Id.* at 4.  The violation report charged Lesane with two specifications: (1) "fail[ing] to truthfully answer inquiries of the [P]robation officer, in that he denied any changes in address" and (2) "fail[ing] to notify the Probation Office of a change in residence, in that he failed to report a change in address."  *Id.*  On February 1, 2022, the United States Marshals arrested Lesane outside the Premises and seized from him a set of keys that opened the door to the Premises.  *Id.* at 4–5.

Judge Broderick described the "specific and articulable facts which, taken together with rational inferences from those facts" reasonably warranted Lesane's arrest for failing to truthfully answer Probation's inquiries and to notify Probation of the change in address:

> Probation had information from the NYPD that Lesane was living at 2551 Hering Avenue.  Probation then conducted its own surveillance and saw Lesane at 2551 Hering Avenue on two different dates.  It is improbable that Lesane would been seen, on two random days, at 2551 Hering Avenue—where the NYPD reported he lived—if he had no connection to that address.  Nevertheless, Lesane's probation officer met with Lesane twice, and Lesane did not report a change in residence.  Indeed, Lesane actively concealed his whereabouts from Probation, by being dropped off within walking distance of 1725 Purdy Street.  These facts give rise to the rational inference that Lesane had moved to 2551 Hering Avenue without telling Probation.

*Id.* at 11 (internal citations omitted).  Judge Broderick also found that Probation had probable cause to arrest Lesane.  Probation had received information from the NYPD that Lesane was "a person of interest as someone in possession of multiple firearms," a report that carried more

8

weight than a mere anonymous tip. *Id.* at 14.  The information provided by the NYPD was also consistent with Lesane's criminal history, which included the conviction before Judge Gardephe of being a felon in possession of a firearm. *Id.* at 14–15.  Further, both surveillance efforts, conducted on apparently random days, resulted in the sightings of Lesane and corroborated the information provided by the NYPD that Lesane was living at the Premises. *Id.* at 15.  Finally, as noted, the Court concluded that suppression would be inappropriate under the good faith exception to the exclusionary rule, rejecting the notion that Probation knowingly misled Judge Gardephe. *Id.* at 18.

Lesane, who by then had elected to proceed *pro se*, moved for reconsideration on December 19, 2022, Dkt. No. 63, and Judge Broderick denied that motion by opinion and order dated January 19, 2023, Dkt. No. 89.  In that order, the Court found that Lesane had "failed to raise any intervening change of controlling law, the availability of new evidence, the need to correct a clear error, or the need to prevent manifest injustice." *Id.* at 8.  On January 9, 2023, this case was reassigned to the undersigned for trial.  Notice of Case Reassignment, January 9, 2023.  With the benefit of Lesane's reply memorandum and oral argument, the Court concluded that there was no basis for reconsidering Judge Broderick's opinion. *See* Dkt. No. 93.

The Court can now compare the evidence upon which the Court previously relied to support its "reasonable belief" and probable cause determinations against the evidence submitted at trial and finds that the evidence offered at trial does not support reconsideration.  Lesane argues, for example, that the Probation officer admitted that there was no "positive identification" of him at the Premises during the January 10, 2022 surveillance.  Dkt. No. 114 at 5, 9–10.  But the Court did not rely upon a statement that the Probation officers had made a formal "positive identification."  Rather, Probation presented evidence that its officers saw "an

9

individual fitting the physical description" of Lesane exiting the Premises and that this individual was wearing the same clothing that Lesane was wearing when he arrived at 1725 Purdy Street. Dkt. No. 80 at 3, 11–12. That information, combined with the information provided to Probation by the NYPD, gave rise to the inference that Lesane resided at 2551 Hering Avenue. Lesane presents no controlling law or any other reason for the Court to reconsider that ruling.

Lesane also argues that the Probation officer testified that she did not ask Lesane whether he had changed his address. Dkt. No. 114 at 7. But the arrest warrant, which was issued for violations of the terms of Lesane's supervised release, was not issued solely based on Lesane's failure to accurately answer his Probation officer's questions—it was also issued based on Lesane's violation of his affirmative obligation to report any change of address. *See* Dkt. No. 80 at 4. Thus, even assuming that Lesane had not made an affirmative misstatement to Probation about his new address, the arrest warrant would still have been valid because of his failure to inform Probation about his new residence. *Cf. United States v. Trzaska*, 111 F.3d 1019, 1026 (2d Cir. 1997) (holding, in the search warrant context, that "[t]he mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant. [A] reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." (quoting *United States v. Reilly*, 76 F.3d 1271, 1282 n. 2 (2d Cir. 1996)). Even if the Court were to find that the arrest warrant was invalidly issued, Lesane has not presented either controlling law or evidence that would lead this Court to reconsider Judge Broderick's holding that the search of the Premises was permissible based on the special needs exception. *See* Dkt. No. 89 at 9–12.

II.     **Defendant's Rule 29 Motion**

Lesane also argues that the evidence was insufficient to support his convictions for possession of firearms following a felony conviction in violation of 18 U.S.C. § 922(g)(1) and possession of firearms in connection with a drug trafficking offense in violation of 18 U.S.C. § 924(c). *See* Dkt. No. 114 at 17–21.

"A defendant challenging a conviction on sufficiency grounds undertakes a 'heavy burden.'" *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013) (quoting *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011)). "A judgment of acquittal can be entered 'only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004)). A conviction must be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011). In considering the sufficiency of the evidence supporting a guilty verdict, the evidence must be viewed "in the light most favorable to the Government." *United States v. George*, 779 F.3d 113, 115 (2d Cir. 2015). The Court must analyze the pieces of evidence "in conjunction, not in isolation." *Persico*, 645 F.3d at 104 (quoting *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008)). The Court exercises an "'exceedingly deferential standard of review,' under which '[the court] must analyze the evidence in the light most favorable to the prosecution' and credit 'every inference that the jury may have drawn in the government's favor.'" *United States v. Liu*, 2022 WL 14177192, at *2 (2d Cir. Oct. 25, 2022) (quoting *United States v. Hassan*, 578 F.3d 108, 126 (2d Cir. 2008)); *see generally United States v. Ray*, 2022 WL 17175799, at *3 (S.D.N.Y. Nov. 23, 2022).

The evidence is sufficient to support Lesane's conviction on both counts. When the Probation officers entered the Premises on February 1, 2022, they recovered, among other things,

11

two rifles, a 9mm pistol, a semiautomatic shotgun, a "ghost" gun, and large quantities of ammunition, including high-capacity magazines. Trial Tr. 437. Section 922(g)(1) of Title 18 of the United States Code makes it a crime "for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). Lesane does not dispute that he has a prior felony conviction. He stipulated to that fact. Nor does he challenge that, if he was in possession of the firearms found in the Premises, he acted knowingly and that the firearms were transported in interstate commerce. His sole challenge is to the jury's conclusion that he possessed the firearms. But, as the Court instructed the jury without objection, "a person need not have actual physical custody over an object in order to be in legal possession of it. If an individual has the ability to exercise substantial control over an object, even if he does not have the intent to exercise such control, then he is in legal possession of that article." Trial Tr. 763.

There was extensive evidence admitted at trial of Defendant's possession of the firearms in the Premises. Prior to February 1, 2022, he had been seen twice entering or exiting the Premises. *Id.* at 629–30. At the time of his arrest, he was in possession of a keychain bearing his name with a key that opened the Premises. *Id.* at 262–63. Additionally, the Premises contained a photograph of Lesane, his clothing, mail with his name on it, and a Department of Corrections identification card bearing his name. *See id.* at 83–85, 672. Two of his neighbors identified him as residing in the Premises and testified that he lived in the Premises. *See id.* at 203–04, 323. That evidence was sufficient for the jury to find the Lesane had constructive possession over the weapons.[3]

---

[3] Even assuming *arguendo* that the keys should have been suppressed because the arrest warrant

The evidence also was sufficient to support Lesane's conviction for possessing a firearm in connection with a drug trafficking crime. Section 924(c) of Title 18 makes it a crime for any person "during and in relation to any . . . [federal] drug trafficking crime [to] us[e] or carr[y] a firearm," or "in furtherance of any such crime [to] possess[] a firearm." 18 U.S.C. § 924(c). The "requirement . . . that the gun be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation." *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005). Section 924(c) "applies where the charged weapon is readily accessible to protect drugs, drug proceeds, or the dealer himself." *United States v. Willis*, 14 F.4th 170, 184 (2d Cir. 2021), *cert. denied sub nom. Pierce v. United States*, 142 S. Ct. 2660 (2022). There is no merit to the argument that the evidence was insufficient to find that Lesane was in the business of selling marijuana for remuneration. When the Probation officers searched the Premises, they recovered 300 grams of marijuana, including marijuana in packages with the brand name "Cakes" on them, scales for weighing marijuana, empty packaging materials, and $10,300 in cash. Trail Tr. 407, 413, 425–26, 445, 527. Additionally, Lesane's neighbors testified that he offered to sell marijuana to them and that he gave one neighbor a sample. *See id.* at 205, 324. The jury need not have heard evidence of an actual consummated sale to conclude that Lesane possessed the marijuana, scales, and packaging materials with the intent to distribute the marijuana.

There also is no merit to Lesane's argument that there was an insufficient nexus between the firearms and the marijuana to support that he possessed the firearms in furtherance of his drug trafficking operation. Section 924(c) "applies where the charged weapon is readily

---

was improperly issued, there was more than enough evidence, viewed in the light most favorable to the Government, for the jury to conclude that Lesane lived in the Premises and thus had the ability to exercise control over the guns in the Premises.

accessible to protect drugs, drug proceeds, or the dealer himself." *Willis*, 14 F.4th at 184. The evidence supported that the Premises was the location where Lesane stashed his drugs and from which he operated his drug trafficking business. One of his neighbors testified that Lesane brought a backpack "full of zip[lock] bag[s] . . . of marijuana" from the Premises in order to give him a sample and that Lesane told him that if he ever wanted to buy marijuana, he should "knock on my door." Trial Tr. 205. The firearms were found in the Premises next to marijuana packaged for sale, scales for weighing marijuana, empty packaging materials, and over $10,000 in cash. It would not have required much of a leap, and not an impermissible one, for the jury to have concluded that Lesane possessed the firearms to protect his drug trafficking business. *See United States v. Bimbow*, 2022 WL 1617490, at *3 (S.D.N.Y. May 23, 2022) (concluding that evidence presented at trial was sufficient to sustain conviction on Section 924(c) count when "guns were found in the garage . . . where [the defendant] admittedly possessed drugs and where evidence established that he was cutting and packaging drugs" (internal citations omitted)).

The Court has considered the remainder of Lesane's arguments with respect to both his motion for reconsideration and his Rule 29 motion finds them without merit.

## CONCLUSION

The motions for a judgment of acquittal and for reconsideration of the order denying his motion to suppress evidence are DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 114, and to mail a copy of this decision to *pro se* Defendant.

SO ORDERED.

Dated: May 19, 2023
New York, New York

_____
LEWIS J. LIMAN
United States District Judge