

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 30, 2023

**BY CM/ECF**
The Honorable Lewis J. Liman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   *United States* v. *Eric Lesane*, 22 Cr. 110 (LJL)

Dear Judge Liman:

The Government respectfully submits this letter in advance of the sentencing of defendant Eric Lesane ("Lesane" or the "defendant"), currently scheduled for July 10, 2023, at 2:00 p.m. For the reasons set forth below, the Government submits that an above-Guidelines sentence of imprisonment of at least 180 months—120 months' imprisonment on Count One and 60 months' imprisonment on Count Three, to run consecutively[1]—is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**A.   Factual Background**

On February 17, 2022, a grand jury sitting in this district returned an indictment charging the defendant with (1) possession of firearms following a felony conviction, in violation of Title 18, United States Code, Section 922(g)(1); (2) distribution and possession with intent to distribute marijuana for remuneration, in violation of Title 21, United States Code, Section 841(b)(1)(D); and (3) possession of firearms in connection with the drug trafficking offense charged in Count Two, in violation of Title 18, United States Code, Section 924(c).

The charges stem from items recovered during a search of Lesane's apartment at 2551 Hering Avenue, Bronx, New York ("2551 Hering Avenue") by the Probation Office. Lesane was on supervised release following his conviction for possession of a firearm after a felony conviction. *See U.S. v. Eric Lesane, a/k/a "Omega"*, 12 Cr. 524 (PGG), Dkt. No. 24. In that case, the Honorable Paul G. Gardephe sentenced Lesane principally to 94 months' imprisonment to be

---

[1] It is the Government's recommendation that a total sentence of 180 months' imprisonment is appropriate to address the defendant's conduct in both this case and his pending violation of supervised release ("VOSR") proceeding. *See id.* In the event the defendant is not sentenced for both his trial conviction and the VOSR on the same day, the Government does not intend to seek a sentence of imprisonment in the VOSR that would result in a total period of incarceration of greater than 180 months. The statutory maximum sentence of imprisonment on the VOSR is two years' imprisonment.

followed by a three-year term of supervised release.  *See id.*  Lesane's supervised release included a number of conditions, including a search condition requiring Lesane to "submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found." *Id.* at p. 4.  At the time, Lesane's address of record with Probation was 1725 Purdy Avenue in the Bronx.

Following a tip from the New York City Police Department that Lesane was residing at 2551 Hering Avenue and that he was a person of interest as someone possessing firearms, probation officers conducted surveillance outside 2551 Hering Avenue and observed Lesane entering and exiting the building.  On or about January 24, 2022, Probation Officer-1 submitted a violation report to Judge Gardephe detailing the results of their investigation and alleging that Lesane violated the terms of his supervised release by failing to advise Probation of a change in his residence and by failing to truthfully respond to inquiries by his probation officer.  Probation requested the Court issue a warrant for Lesane's arrest, which Judge Gardephe signed that same day. (Dkt. No. 21 Ex. A.)

On or about the morning of February 1, 2022, deputies from the United States Marshals Service ("USMS") initiated surveillance at 2551 Hering Avenue.  (Tr. 172:3-12; Tr. 195:20-25.)  A deputy marshal observed Lesane exit the side door of 2551 Hering Avenue (Tr. 175:1-7) and arrested Lesane as he walked down the block from the location.  (Tr. 175:21-23.)  The USMS conducted a search of Lesane's person incident to that arrest and removed, among other things (Tr. 197:14-198:8),  a set of keys on a blue paisley keychain.  (Tr. 176:1-13.)  The USMS notified Probation of Lesane's arrest and (Tr. 176:23-177:2.) transferred custody of Lesane's personal property to NYPD personnel for safekeeping.  (Tr. 197:14-198:8.)  After probation officers arrived at 2551 Hering Avenue, an NYPD officer transferred custody of the defendant's personal property to Probation Officer Adam Pakula, who, in turn, handed the property to Supervisory Probation Officer Joseph Lombardo.  (Tr. 243:17-244:10.)  Officer Lombardo used  the keys recovered from Lesane's person to open an apartment on the first floor of 2551 Hering Avenue – an apartment identified by other residents of the house as Lesane's.  (Tr. 261:6-10; Tr. 246:13-17.)  Probation officers then searched Lesane's apartment pursuant to the search condition of his supervised release.  (Tr. 246:18-247:2; Tr. 351:22-25.)

In the course of Probation's search, probation officers found mail bearing Lesane's name, as well as a wallet containing a Bureau of Prisons ("BOP") identification card bearing Lesane's name, photograph, and BOP number.  Probation officers also found five firearms inside of Lesane's apartment, including: (1) a Ruger Precision Rifle, (2) a Mossberg Rifle, (3) a SWD Model M-11 9mm pistol, (4) a Typhoon 12 Gauge Semiautomatic Shotgun, and (5) a black pf940c polymer 80 privately manufactured firearm, also known as a "ghost" gun (*i.e.*, a gun assembled by its user without a serial number).  (*See* Tr. 265:9-266:2; Tr. 355:11-17; Tr. 425:8-17; 490:19-25.)  Probation officers also found a large quantity of ammunition, including high-capacity magazines that allow the shooter to fire multiple rounds without reloading.  (*Id.*; Tr. 436:12-17; Tr. 437:13-15; Tr. 439:23-440:4; Tr. 543:17-544:5.)   In addition to the guns and ammunition, probation officers found marijuana packaged for distribution, empty packaging materials, a scale with what appeared to be marijuana residue on it, and over $10,000 in cash.  (*See* Tr. 265:9-266:2; Tr. 425:8-17; Tr. 443:12-20; Tr. 445:18-450:19.)

At trial, the Government elected not to proceed on Count Two of the Indictment and only presented evidence to the jury on Count One and Count Three. The jury received the case on January 30, 2023, and returned a verdict later that day finding the defendant guilty on both counts. (Tr. 797:15-23.)

**B.    The Applicable Guidelines Range**

As described in the PSR, the Advisory Guidelines Range applicable to Count One is 63 to 78 months' imprisonment. The Advisory Guidelines Range applicable to Count Three is 60 months' imprisonment, to run consecutively to any other sentence of imprisonment.

**C.    Applicable Law**

    **1.    The Applicable Guidelines**

The Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although Booker held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

D. **A Sentence of at Least 180 Months' Imprisonment Is Warranted**

The Government respectfully submits that an above-Guidelines total term of imprisonment of at least 180 months is sufficient, but not greater than necessary, to reflect the seriousness of the defendant's conduct, promote respect for the law, and provide just punishment for the offense.

*First,* an above-Guidelines term of imprisonment is appropriate in light of the incredibly serious nature and circumstances of the offense. The defendant had an arsenal of high-powered weapons and dozens of rounds of ammunition to protect his drug dealing business—two high-powered rifles, including one with a scope and a stand, a semiautomatic shotgun, and two semiautomatic handguns, including a ghost gun.



The defendant's weaponry went beyond just possessing a handgun for personal protection—the defendant had multiple high-powered rifles and a semiautomatic shotgun. One of the rifles was so large and heavy that it was equipped with a stand to support the barrel while firing.



Additionally, the ghost gun, or privately manufactured firearm, does not have a serial number and such firearms are designed to be untraceable by law enforcement. Further, the defendant had ammunition that fit each of these firearms, showing that he was ready and able to actually use them to protect himself and his drug business. The defendant was also equipped to fire a large number of rounds at a high rate of speed—he had two 30 round magazines taped together so that when one was emptied, it could be quickly ejected and the other inserted, allowing the defendant to fire *60 rounds* in a very short period of time.



And the seriousness of the offense is only increased by the fact that the defendant possessed these firearms in connection with his drug business—a dangerous, illegal business, that often leads to violence. The dangerous combination of drug dealing and guns only further weighs in favor of an above-Guidelines sentence. Drug dealing and violence often go hand-in-hand as drug dealers attempt to protect and/or seize lucrative drug territory. Lesane's possession of so many lethal and high-powered firearms made clear that he was both ready and willing to resort to violence to protect his drug territory. Lesane's own neighbors in the home where his apartment was located provided information about his drug operation, the constant flow of people in and out of his apartment, and his threat to "flush everyone out of the house." (*See* Tr. 326:17-22). The association between drug dealing and weapons possession is well-documented. Weapons, particularly firearms, are "tools of the narcotics trade," *United States v. Calderon*, 785 F.3d 847, 852 (2d Cir. 2015), and courts have recognized "the indisputable fact that violence is endemic to the trade in drugs." *United States v. Fife*, 624 F.3d 441, 447 (7th Cir. 2010).[2]

---

[2] The Sentencing Commission has determined that the risk of violence caused by the combination of firearms and drugs merits an increase in a defendant's sentence. "The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 Application Note 11(A).

In addition to the firearms, the defendant also had a large number of items associated with the Psycho Maniac Crips ("PMC") set of the Crips gang in his apartment and publicly held himself out as a member of PMC, including multiple blue paisley print bandanas and signs associated with PMC:



Additionally, the defendant had a black and blue baseball bat wrapped in barbed wire—an item that appears designed to inflict significant pain and damage if used against another person:



The defendant's open and public membership in the Crips is also important context for the firearms possession of which he was convicted in this case. Gangs routinely guard their territory and resort to acts of violence to ensure that no rival gang members encroach on their drug territory. As demonstrated in many cases in this district and elsewhere, the intersection of drugs and gangs inevitably involves guns and violence. *See, e.g., United States v. Pagett*, No. 21-1632, 2022 WL 2057572, at *2 (2d Cir. June 8, 2022) ("Eight Trey Crips gained status and enhanced their reputation in the gang by committing acts of violence."). Here, the defendant was equipped to engage in a level of violence in excess of that typically associated with even the most pernicious gang member.

*Second*, an above-Guidelines sentence is necessary to provide adequate deterrence of criminal conduct of this type and to specifically deter the defendant from engaging in such conduct again after his release. The instant offense is the defendant's 15th criminal conviction and his second conviction for possessing a firearm after a felony conviction in this court.

In 2013, the defendant pled guilty to possession of a firearm after a felony conviction for selling a 9mm rifle with a defaced serial number along with a loaded 10 round magazine and a flash suppressor[3] to a confidential source. *See* 12 Cr. 524 (PGG). During the sentencing, Judge Gardephe indicated his intention to sentence the defendant to 110 months' imprisonment, saying "[u]nfortunately, the driving factor here is the defendant's criminal record. This is his 14th conviction. He has convictions for a number of serious crimes, robbery in the third degree, attempted robbery in the third degree, menacing, criminal possession of a weapon, assault with intent to commit physical injury. He's also pleaded guilty to selling marijuana, heroin and crack cocaine. He has been sentenced to substantial periods of incarceration without demonstrable effect." (Sent. Tr. 29:14-22.) Judge Gardephe went on to discuss the defendant's history of disciplinary infractions while in federal custody and his association with the Crips gang. (*Id.* 29:24-30:17.) In concluding that "the defendant, at this time, constitutes a danger to the community," the Court determined that a sentence within the Guidelines range of 110-120 months' imprisonment was appropriate. (*Id.* at 30:18-20.) Ultimately, Judge Gardephe subtracted 16 months from his 110-month intended sentence to account for time spent in custody that would not be credited by the Bureau of Prisons. (*Id.*)

Between that sentence and a state sentence for another firearms offense, the defendant spent approximately 11 years in prison between 2010 and April 2021, when he was released to begin his term of supervised release in this district. On February 1, 2022—less than 10 months after his release from his prior sentence—the defendant was arrested for a violation of supervised release and Probation found the arsenal of guns at issue in this case. Clearly, the defendant's prior lengthy sentences of imprisonment have not deterred him from reoffending. As his repeated convictions demonstrate, the instant offenses were not a one-time lapse in judgment. Rather, they were part of a protracted course of criminal conduct that has continued over many years. To date, the defendant has given absolutely no indication that he intends to change his behavior and abide by the rules and norms of society. To the contrary, all of the available evidence suggests that he will continue to recidivate and will likely do so immediately upon, or shortly after, his release.

---

[3] A flash suppressor is a device that attaches to the muzzle of a firearm to reduce the visible muzzle flash when a firearm is discharged.

Indeed, while detained prior to trial and while awaiting sentencing in this case, the defendant has incurred a number of disciplinary infractions—the same sort of behavior that Judge Gardephe noted during the defendant's previous sentencing proceeding. In one particularly troubling incident in February 2023, the defendant threatened to kill a corrections officer, telling her in sum and substance that he would "stab and kill your ass today." On another occasion, the defendant became irate and threw a food tray at a corrections officer. The defendant's disciplinary record in jail shows that he continues to act in a violent and dangerous way and that his arrest and conviction in the instant matter has had no significant impact on his behavior.

The Court should therefore impose a sentence that, unlike Lesane's prior interactions with the criminal justice system, ensures that he, and others like him, do not make these types of choices again by continuing to engage in incredibly serious and dangerous criminal conduct. A Guidelines sentence here is insufficient to deter the defendant from acquiring additional firearms or committing other crimes as soon as he is released—indeed, his prior term of imprisonment was approximately 11 years—132 months—which is squarely within the Guidelines range here. Less than 10 months after his release from that term of imprisonment, Lesane was arrested with the cache of weapons at issue in this case—clearly demonstrating that a longer term of imprisonment is necessary to prevent the defendant from reoffending and adequately ensure the safety of the community.

* * *

For the reasons set forth above, the Government submits that a total sentence of at least 180 months' imprisonment, is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____/s/_____
Elizabeth A. Espinosa/Dominic A. Gentile
Assistant United States Attorneys
(212) 637-2216